WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robin Seaman,<br><br>          Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>          Defendant. | No. CV-21-01054-PHX-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Robin Seaman's application for disability insurance benefits by the Social Security Administration. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial. The Court now addresses Plaintiff's Opening Brief (Doc. 16, "Pl. Br."), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 17, "Def. Br."), and Plaintiff's Reply Brief (Doc. 18, "Reply"). The Court has reviewed the briefs and the Administrative Record (Doc. 13, "R."), and now affirms the Administrative Law Judge's ("ALJ") decision.[1]

**I.    BACKGROUND**

Seaman filed an application for Title II benefits on April 27, 2018, alleging disability beginning May 16, 2017. (R. at 21.) Seaman's claim was denied initially on July 30, 2018, and subsequently denied upon reconsideration on March 28, 2019. (*Id.*) Shortly thereafter, Seaman appeared telephonically before the ALJ for a hearing on her claim. (*Id.*)

---

[1] Both parties have submitted legal memoranda and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

By decision dated November 27, 2020, the ALJ denied Seaman's claim. (*Id.* at 30.) Seaman was denied review of the ALJ's decision by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-6.) Now, pursuant to 42 U.S.C. § 405(g), Seaman seeks judicial review of the Commissioner's decision. (Doc. 1.)

The Court has reviewed the medical evidence and the administrative record and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon reviewing the medical evidence, the ALJ concluded that Seaman had a severe impairment in the form of "mild right peripheral vestibulopathy." (R. at 23.) With this impairment in mind, the ALJ calculated Plaintiff's residual functional capacity ("RFC").[2] The ALJ found that Seaman has the RFC to perform a "full range of work at all exertional levels" but also found non-exertional limitations, stating that "she can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. [Seaman] can also only occasionally balance, stoop, and crawl and can frequently kneel and crouch. She cannot work around heavy machinery with fast moving parts or at unprotected heights." (*Id.* at 24). The ALJ concluded that Seaman is capable of performing her past relevant work, and after evaluating the medical evidence and testimony, found that Seaman was not disabled from the alleged disability onset date through the date of the decision. (*Id.* at 30.)

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is

---
[2] Residual functional capacity is the most a claimant can still do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III.   ANALYSIS

Seaman raises three principal arguments in her challenge of the ALJ's decision. First, Seaman asserts that the ALJ improperly rejected the medical opinions by failing to provide specific and legitimate reasons for doing so. (Pl. Br. at 6.) Next, Seaman contends that the ALJ improperly rejected her symptom testimony without providing clear and convincing reasons. (*Id.* at 11.) Finally, Seaman argues that the ALJ's use of the vocational expert's testimony has no evidentiary value. (*Id.* at 14.)

**A.     Medical Opinion Evidence**

Seaman first takes issue with the ALJ's treatment of the medical opinions provided by family nurse practitioner Amy M. Steinhoff ("FNP Steinhoff") and physical therapist Sanford Goldstein ("PT Goldstein"). (*Id.* at 6.) Specifically, Seaman contends that the rejection of these opinions was deficient because the ALJ failed to provide specific and legitimate reasons for rejecting the medical opinion evidence. (*Id.* at 11.) In response, the Commissioner maintains that substantial evidence supports the ALJ's finding that the medical opinions are unpersuasive. (Def. Br. at 11.)

In 2017, the Social Security Administration amended the regulations for evaluating medical evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). For claims filed on or after March 27, 2017, the revised rules apply. *Id.* Here, Plaintiff's claim was filed on April 27, 2018, so the revised rules apply. (R. at 21.) The Ninth Circuit recently addressed the effect of the new regulations, so the Court begins by addressing this issue. *See Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022).

Under the old regulations, "[t]he law in the Ninth Circuit [was] that, although the ALJ must consider all medical opinion evidence, there is a hierarchy among the sources of medical opinions. Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians." *Latahotchee v. Comm'r of Soc. Sec. Admin.*, 2021 WL 267909, *4 (D. Ariz. 2021) (citation omitted). Based on this hierarchy, the Ninth Circuit consistently ruled that an ALJ may only reject an examining physician's opinion by providing "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

Under the revised rules, all evidence an ALJ receives is considered, but the rules create specific articulation requirements regarding how medical opinions and prior administrative medical findings are considered. 20 C.F.R. §§ 404.1520c(a)–(b),

- 4 -

416.920c(a)–(b). The 2017 regulations provide that "[ALJs] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion." *Id.* § 404.1520c(a). Instead, the ALJ determines the persuasiveness of the piece of evidence's findings based on factors outlined in the regulations. *Id.* §§ 404.1520c(a)–(b), 416.920c(a)–(b). The most important factors an ALJ must "consider when [evaluating] the persuasiveness of medical opinions . . . are supportability . . . and consistency." *Id.* § 404.1520c(a). Other factors, which an ALJ "may, but [is] not required to[ ] explain" when evaluating the persuasiveness of a medical opinion, are the medical source's "relationship with the claimant," "specialization," "familiarity with the other evidence in the claim," and "understanding of our disability program's policies and evidentiary requirements." *Id*. § 404.1520c(b)(2), (c).

In *Woods*, the Ninth Circuit held that these revised regulations clearly intended to abrogate its precedent requiring ALJs to provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion. *See Woods*, 32 F.4th at 792. Nevertheless, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* This means that an ALJ "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. § 404.1520c(b), (b)(2)) (internal citation omitted) (alteration in original). Supportability is defined as how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical findings." 20 C.F.R. § 404.1520c(c)(1). Consistency means "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). The ALJ should also treat opinions as more persuasive if they are more consistent with "other medical sources and nonmedical sources in the claim." 240 C.F.R. § 404.1520c(c)(2).

- 5 -

FNP Steinhoff opined that Seaman should do "no climbing of ladders or standing on step stools; no standing for more than two hours per shift; no frequent movement or walking for more than two hours per shift; and work at eye level to avoid [her] head from having to look down." (R. at 28, 349.) The ALJ's treatment of this opinion adequately addressed the "supportability and consistency" factors as explained in *Woods*. 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b), (b)(2)). As to the consistency factor, the ALJ explained that FNP Steinhoff's opinion was inconsistent with "treatment notes (specifically those from Ms. Steinhoff) document[ing] reports of improvement in the duration of the dizziness." (*Id.* at 27.) Furthermore, the ALJ compared FNP Steinhoff's findings with multiple examinations that "did not demonstrate abnormalities . . . [and] revealed no evidence of distress, gait abnormalities, or neurological deficits." (*Id.*) Elsewhere, the ALJ's decision also provides examples of the "unremarkable" results of physical examinations conducted under FNP Steinhoff's care. (*Id.* at 27, 28.) Together, these explanations sufficiently address the consistency of FNP Steinhoff's opinions. The ALJ then found that FNP Steinhoff's conclusions were unsupported because they drew "heavily on [Seaman's] subjective complaints [rather than] on her own objective findings during visits." (*Id.* at 28.) By properly considering the supportability and consistency factors, the ALJ did not err in finding FNP Steinhoff's conclusions unpersuasive.

In November 2018, PT Goldstein performed a functional capacity evaluation ("FCE") on Seaman.[3] PT Goldstein concluded that Seaman was "theoretically disabled from performing even sedentary work on a regular basis" and that "she would require significant accommodations . . . in order to work even part-time in jobs she is potentially interested in." (*Id.* at 26.) In support of this conclusion, PT Goldstein opined that Seaman had mild weakness in the right leg, gait deviations, low bilateral grip and pinch strength, and very low manipulative activities. (*Id.*) The ALJ found this opinion unpersuasive. Notably, the ALJ concluded that these findings are "not corroborated by the remaining

---

[3] Although the ALJ never specifically identifies PT Goldstein by name, PT Goldstein's findings and the FCE results are one and the same. Thus, by discounting the FCE results, the ALJ discounted PT Goldstein's opinion.

objective medical evidence in [the record]" and "not supported by observations in the remainder of the treatments notes." (*Id.* at 26-27, 28.) As to the consistency of PT Goldstein's opinions, the ALJ found that the FCE objective findings "are not reflected elsewhere in the file" and "stand out alone against the rest of the record." (*Id.* at 27, 28.) The ALJ then pointed to the fact that there were "no documented problems with gait, Romber, tandem walking, strength, and manipulative agility on exams with treatment providers." (*Id.* at 28.) Further, the ALJ highlighted exams in June of 2018, March of 2019, and June 2020, that were "essentially normal or did not note significant concerns." (*Id.*)

ALJs no longer need to provide "specific and legitimate" reasons for discounting treating medical opinions. *See Woods*, 32 F.4th at 792. Nonetheless, they are still required to provide an explanation supported by substantial evidence. *Id.* Here, the ALJ's explanations met this standard. As detailed above, the ALJ pointed to specific evidence in the record tending to contradict FNP Steinhoff and PT Goldstein's opinions. Furthermore, the ALJ sufficiently explained why these opinions were unsupported by the objective medical evidence in the record. As a result, the ALJ did not err in finding FNP Steinhoff's and PT Goldstein's opinions unpersuasive.

### B. Symptom Testimony

Seaman next contends that the ALJ erred by rejecting her symptom testimony without providing clear and convincing reasons for doing so. (Pl. Br. at 11-12.) The Commissioner responds that the ALJ properly evaluated Seaman's subjective symptom testimony, "and reasonably found that her allegations were not entirely consistent with the overall evidence in the record." (Def. Br. at 15.)

An ALJ employs a two-step process in evaluating a claimant's symptom testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). Initially, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the . . . symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v.*

*Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). Then, provided there is no evidence of malingering, the ALJ must evaluate the claimant's statements in context of (1) the objective medical evidence and (2) other evidence in the record. *See* 20 C.F.R. § 404.1529(c)(2)-(3). At this step, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (internal quotation marks omitted) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This requirement prevents an ALJ from "arbitrarily discredit[ing]" the claimant's subjective symptom testimony. *Thomas*, 278 F.3d at 958. Despite the "clear and convincing standard [being] the most demanding required in Social Security cases," *Garrison*, 759 F.3d at 1015 (internal quotation marks and citation omitted), the ALJ need not "believe every allegation of disabling pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Instead, when assessing the claimant's credibility, the ALJ may consider "inconsistencies either in claimant's testimony or between his testimony and his conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains." *Thomas*, 278 F.3d a 958-59 (internal quotation marks and citation omitted). Should a district court find that the ALJ's specific, clear and convincing reasons are supported by substantial evidence, the court must not second-guess the ALJ's judgment, and should affirm the ALJ's decision. *See Fair*, 885 F.2d at 604.

Here, the ALJ found no evidence of malingering and that Seaman's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. at 27.) As a result, step one of the analysis is satisfied. Thus, the Court turns to whether the ALJ's rejection of Seaman's symptom testimony was based on specific, clear and convincing reasons supported by substantial evidence.

In discounting Seaman's symptom testimony, the ALJ properly relied on the objective medical evidence in the record. Before explaining why it was rejected, the ALJ explicitly recited Seaman's symptom testimony regarding her alleged vertigo and

dizziness. (*Id.* at 25.) The ALJ concluded that Seaman's testimony concerning the intensity, persistence and limiting effects of her symptoms was not fully supported by evidence in the record. (*Id.* at 27.) In making credibility determinations, the ALJ pointed to examination results as well as medical opinion testimony. The ALJ highlighted that medical testing has "ruled out concerning underlying causes for the symptoms" and that "repeat diagnostics have been essentially normal or at most inconclusive." (*Id.*) Further, the ALJ emphasized "extensive evaluation[s] by both ENT and neurology specialists." (*Id.*) Specifically, the ALJ considered the opinion of Dr. Gregory Hunter who found "no support for exertional restrictions but identified limits on postural activities . . . as well as on working around heights." (*Id.* at 27-28.) The ALJ found this conclusion consistent with "the record which documents multiple complaints regarding balance, but does not have significant support for significant limitations." (*Id.* at 28.) Furthermore, the ALJ considered medical examination results showing normal gait, no nystagmus, and unimpaired reflexes, strength, and sensation as well as normal CT scans and MRI findings. (*Id.* at 25, 26.) The ALJ also reviewed VNG studies with essentially normal results. (*Id.* at 26.) The Court finds that the ALJ's explanations detailing the inconsistencies between Seaman's testimony and the objective medical evidence provided specific, clear and convincing reasons supported by substantial evidence to reject Seaman's symptom testimony. Thus, the ALJ did not err in rejecting Seaman's symptom testimony.

The Court need not discuss the ALJ's use of Seaman's daily activities to discount her symptom testimony since any other error in assessing Seaman's subjective complaints is harmless so long as a valid reason for rejecting them remains. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

### C.   Vocational Expert

Lastly, Seaman contends that the vocational expert's testimony lacked complete evidentiary value because the ALJ failed to provide the vocational expert with all her limitations and restrictions. (Pl. Br. at 14.) The Ninth Circuit has repeatedly rejected this argument. *See e.g.*, *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005);

*Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989) (holding that it is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record). ALJs may properly propose hypotheticals to vocational experts that only contain those "limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss*, 427 F.3d at 1217-18 (citing *Magallanes*, 881 F.2d at 756-57). As explored in detail above, the ALJ did not find all of Seaman's claimed limitations and restrictions to be supported by substantial evidence. As such, the ALJ did not err by providing the vocational expert with solely those restrictions that the ALJ found to be supported by substantial evidence.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** affirming the November 27, 2020 decision of the Administrative Law Judge (R. at 30), as upheld by the Appeals Council on April 28, 2021 (R. at 5).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 2nd day of September, 2022.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge